CLARKSON v. FISHER et al.

(Circuit Court of Appeals, First Circuit. December 7, 1915.)

No. 1155.

APPEAL AND ERROR ☞694—RECORD—MATTERS PRESENTED FOR REVIEW.

The facts found by the District Court and by a master cannot be revised by the Circuit Court of Appeals, where the proofs are not included in the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2910, 2915; Dec. Dig. ☞694.]

Appeal from the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Receivership action against the Walpole Tire & Rubber Company, in which Geoffrey T. Clarkson filed a claim, which was opposed by

Robert C. Fisher and others. From a decree disallowing the claim, said claimant appeals. Affirmed.

Cornelius W. Wickersham, of New York City (Cadwalader, Wickersham & Taft, of New York City, on the brief), for appellant.

Lee M. Friedman, of Boston, Mass. (Swift, Friedman & Atherton, of Boston, Mass., on the brief), for appellees.

Before PUTNAM and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is an attempt on the part of the minority stockholders to enforce rights in equity against a corporation known as the Sealomatic Inner Tube Company with reference to its rights to a process for either a patent or a secret method for constructing automobile tubes known as Sealomatic inner tubes, and improvements thereon. The litigation has particular reference to enforcing on behalf of the corporation a contract with one Tinkham, who is made a party defendant, and who was alleged to have obligated himself to the amount of $100,000, for the benefit of the corporation. Unfortunately the contract is not shown by a literal recital of its terms or reference to any copy thereof in the record. The brief by the appellant, who was the complainant below, alleges that Tinkham received $400,000 in capital stock at par, and "agreed to advance from time to time to that company, as and when it should be needed, money up to $100,000, to be used in providing and equipping the company for the manufacture of the tubes referred to."

The brief also states that, after Tinkham made his initial payment of $16,000, he paid in no further sums, so that, apparently from those allegations, $84,000 is in issue. The brief also alleges that the corporation in question, including a second corporation, which became interested in connection with it, turned over the attempts to manufacture the valveless inner tubes to its own chemists, and because they were unsuccessful in those attempts now endeavors to excuse itself on the ground that the inner tubes were without commercial value. The claims, which take the form of proof of claims under a receivership, and not under a bill in equity, contain a prayer for relief in so many elements that it is impossible to gather from them the precise terms of the obligation assumed by Tinkham. Taking the record as a whole, it would seem that the purport of Tinkham's agreement was to furnish funds to conduct the experiments required for developing the patent, or the secret method of manufacture, or whatever it was, and this accounts for the findings with which the master, to whom the proof of claims was referred, closed his report, in the following terms:

"(1) Upon consideration of all the evidence I find, and so report, that the Sealomatics patent had no commercial value, and that the inner tubes produced under the Sealomatics patent were of no commercial value.

"(2) Upon all the evidence in the case I find, and so report, that there was no conspiracy entered into by the Walpole Rubber Company—(a) to prevent the Valveless Inner Tube Company from calling upon Tinkham for the balance of $100,000, viz., $84,000; (b) to prevent the Valveless Inner Tube Company from continuing its business.

"(3) Upon all the evidence in the case I find, and so report, that the Walpole Rubber Company did not wrongfully take possession of the property and office of the Valveless Inner Tube Company.

"(4) Upon all the evidence in the case I find, and so report, that the failure of the Valveless Inner Tube Company was not caused by any act or acts of the Walpole Rubber Company.

"I do not consider it necessary to rule upon the question raised at the hearings as to whether the claimant has any standing in the capacity in which he has presented his proof of claim because upon all the evidence in the case I find, and therefore report, that neither the Walpole Rubber Company nor the Walpole Tire & Rubber Company has wrongfully deprived the Valveless Inner Tube Company of any property or valuable rights as alleged by the claimant, and therefore there is nothing due from the Walpole Tire & Rubber Company to said claimant, and therefore his claim for damages should be denied."

The proceedings are subject to many criticisms, and are very complicated. All we need to refer to, however, is the findings of the master quoted. We find in the report no opinion of the learned Judge of the District Court, and only a decree giving effect to the conclusion of the master. The record shows, however, aside from the insufficient statement of the obligation assumed by Tinkham, that the case is full of questions of fact, which lie at the very foundation. Indeed, the brief for the complainant, now the appellant, contains the following statement:

"Nevertheless, based largely on the testimony of the Walpole's own officers and employés, the master has found that the Sealomatics patent had no commercial value, and that the Walpole Company is in no way responsible for its acts of commission and omission, which resulted in the entire downfall of the enterprise."

This, of course, leads the mind directly to the impression that the whole proceedings involve only a mere wreck, leaving nothing of such value as requires the attention of a court in equity, according to the well-settled rules; but, however this may be, what we have cited from the proceedings shows that it is impossible for us to revise the facts found by the master and the court below, as the proofs which lie at their foundation are not included in the record. According to the well-settled rules in equity in the federal tribunals, we are unable without these proofs to revise the decision of the District Court, and it is plain, on examining the record, that what is thus involved is the essence of the case, although it is reached by a long road, through a confused line of circumstances.

The decree of the District Court is affirmed, and the appellees recover their costs of appeal.